IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID LEE BAKER,

        Plaintiff,

v.                                   Case No. 6:14-cv-01271-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff David Lee Baker appeals a final decision of the Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act. The Commissioner denied benefits after finding that plaintiff was capable of performing two jobs that exist in significant numbers in the national economy – cashier II and arcade attendant. The sole issue raised in this appeal is whether the Commissioner erred by finding that these jobs exist in significant numbers in the national economy.

### I. Factual and Procedural Background

Plaintiff alleged an onset disability date of June 1, 2011. After his claim for benefits was initially denied, he requested a hearing before an Administrative Law Judge (ALJ). On December 4, 2012, plaintiff appeared in Independence, Kansas, for a video hearing that was conducted by ALJ Dickie Montemayor from San Francisco, California. Plaintiff testified at the hearing, as did vocational expert Lawrence S. Hughes. Plaintiff was represented by a non-attorney representative.

The ALJ issued a written opinion denying plaintiff's claim for benefits on February 7, 2013. Dkt. 9-3 at 25.  Following the five-step analysis called for by the regulations, the ALJ first found that plaintiff had not engaged in substantial gainful activity from his alleged onset date through his last-insured date of December 31, 2011. *Id*. at 27.  Second, he found that plaintiff had two severe impairments: degenerative disc disease (DDD) and chronic pulmonary obstructive disease (COPD).  *Id*. The ALJ found that plaintiff also had affective disorder but that it was not a severe impairment.  Third, the ALJ found that none of the impairments, alone or in combination, met or equaled the severity of the impairments listed in the regulations.

The ALJ next determined plaintiff's residual functional capacity (RFC). He found plaintiff could perform light work (as defined by the regulations) with alternate sitting and standing every 15 minutes; occasional pushing and pulling; occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional stooping, kneeling, crouching, and crawling; avoidance of concentrated exposure to cold, vibration, heights, fumes, odors, dust and gases; and no production or pace work.

At the fourth step of the analysis, the ALJ found that plaintiff's RFC prevented him from performing his past relevant work as an auto mechanic and salvage yard employee. Dkt. 9-3 at 34. Finally, at step five, the ALJ found there were two unskilled jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically cashier II and arcade attendant. *Id.* at 35.

In reaching this conclusion, the ALJ relied on the testimony of vocational expert Lawrence Hughes. Hughes testified he was familiar with jobs that exist in the national

and the regional economy, with the relevant region being the State of Kansas. Dkt. 9-3 at 70. He testified that a person with the limitations outlined by the ALJ (which were subsequently found to be plaintiff's limitations) could perform the jobs of cashier II and arcade attendant. Dkt. 9-3 at 71-72. Hughes said there were 87,000 cashier II jobs nationally and 750 such jobs in the region. Dkt. 9-3 at 71. He testified there were 26,000 arcade jobs nationally and 200 such jobs in the region. *Id*. These numbers reflected a 90% erosion in the base of light work due to the requirement of a sit/stand option. The ALJ found that Hughes' testimony was consistent with the Dictionary of Occupational Titles and that it supported a finding that plaintiff was capable of adjusting to work that existed in significant numbers in the national economy. Dkt. 9-3 at 35.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (*citing Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (*citing Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist.

4

LEXIS 76220, at *4-5 (*citing Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (*citing Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id.*

### III. Analysis

Plaintiff argues that a "significant number" of relevant jobs does not exist when all of the circumstances are considered, including the fact that plaintiff lives in the small town of Parsons, Kansas (with a population of just over 10,000) and the surrounding sixteen counties have a combined population of less than 250,000.  Dkt. 14 at 10-11.  Noting that these counties account for about eight percent of the state's total population, plaintiff argues that the existing jobs in the region where he lives are only

eight percent of the regional numbers cited by the vocational expert.  *See* Dkt. 14 at 11 ("A simple math calculation … would further reduce the arcade attendant job from 200 in the state of Kansas to 16.8 jobs … and the cashier II jobs would be further reduced from 750 jobs to 63 jobs … in the sixteen counties in southeast Kansas.").

Plaintiff points out that in *Chavez v. Barnhart*, 126 Fed.Appx. 434, 2005 WL 256532 (10th Cir. 2005), the court rejected any "judicial line-drawing" on whether a particular number of jobs is significant and instead left it to "the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id*. at 436 (*quoting Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)).  *Trimiar* in turn indicated the following factors go into a proper evaluation of "significant numbers":

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Trimiar*, 966 F.2d at 1330 (citation omitted). Plaintiff argues he is physically incapable of driving any great distance to work and that the *Trimiar* factors should result in a finding that a significant number of relevant jobs does not exist.

Plaintiff's emphasis on the low number of jobs located near his hometown misses the mark. To be disabled, an individual must be unable to do his previous work and any other substantial gainful work "which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  "Work which exists in the national economy" is defined as "work which

exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*  As explained by the Tenth Circuit in *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009), the relevant test is "*either* jobs in the regional economy *or* jobs in the national economy." *Id.* at 1274, n.3 (emphasis in original).  The multifactor test in *Trimiar* was used because the expert in that case testified only as to the number of existing jobs in the regional economy. *Id.*

*Raymond* pointed out that "[t]he controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond*, 621 F.3d at 1274. The regulations are particularly clear on this point, noting that "[i]t does not matter whether … work exists in the immediate area in which you live" and that a claimant is not disabled if he or she remains unemployed "because of … lack of work in your local area." 20 C.F.R. §§ 404.1566, 416.966.

The ALJ considered all of the evidence, including the testimony of the vocational expert, in finding that plaintiff was capable of adjusting to work that existed in significant numbers in the national economy. Dkt. 9-3 at 35. The expert's testimony showed there were approximately 87,000 cashier II jobs and 26,000 arcade attendant jobs in the national economy.  This evidence of a combined total of 113,000 jobs that plaintiff could perform (including about 950 jobs in the State of Kansas) provided substantial evidence for the ALJ's conclusion that such jobs existed in significant numbers in the national economy. *See Trimiar*, 966 F.2d at 1332 (ALJ's finding as to significant number was supported by substantial evidence; "[w]e do not presume to

interpose our judgment for that of the ALJ); *Botello v. Astrue*, 376 Fed.Appx. 847, 2010 WL 1645976 (10th Cir. 2010) (declining to remand where VE identified 67,250 jobs available in the national economy). *Cf. Raymond*, 621 F.3d at 1274 (court has recognized that 152,000 in national economy was significant); *Bull v. Comm'r. of Soc. Sec.*, 2009 WL 799966 (N.D. N.Y., Mar. 25, 2009) (VE's testimony that 100,000 jobs existed in national economy and 125 locally was significant number); *Butcher v. Shalala*, 1994 WL 773430, at *2 (D. Utah, Oct. 26, 1994) (VE's opinion that 100,000 cashier II jobs existed was substantial evidence).

**IT IS THEREFORE ORDERED** this  19th day of October, 2015, that the final decision of the Commissioner denying plaintiff's application for benefits is AFFIRMED.

s\J. THOMAS MARTEN
 J. THOMAS MARTEN,  JUDGE